**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**MAHAMMAD KHAMMADOV,**

**Petitioner,**

**v.** **Civil Action No. 3:26cv589**

**WARDEN, CAROLINE DETENTION FACILITY, *et al.*,**

**Respondents.**

# MEMORANDUM OPINION

This matter comes before the Court on Petitioner Mahammad Khammadov's Second Motion to Enforce Judgment (the "Motion" or "Motion to Enforce"), (ECF No. 15),[1] which challenges the constitutional adequacy of the bond hearing that he received pursuant to the Court's August 13, 2026 Order, (ECF No. 8). For the reasons articulated below, the Court will grant Petitioner's Motion. (ECF No. 15.)

## I. Background

### A. Procedural Background

On July 27, 2026, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition") challenging his detention by Immigration and Customs Enforcement ("ICE"). (ECF No. 4.) On July 30, 2026, the Court ordered Respondents to file a notice indicating whether the factual and legal issues presented in the Petition differed in any material fashion from those presented in *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025). Respondents indicated that no material differences existed. (ECF No. 6.)

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

On August 13, 2026, the Court incorporated into this habeas proceeding each of the substantive filings in *Duarte Escobar*, granted the Petition, and ordered Respondents to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a). (ECF Nos. 7, 8.) The Court ordered the hearing to take place within 24 hours, by August 14, 2026, and instructed that Respondents bore the burden of proving that Petitioner posed a risk of flight or a risk of danger. (ECF No. 7, at 10; ECF No. 8, at 1.)

On August 14, 2026, Petitioner's counsel noticed an appearance and filed a motion to enforce (the "First Motion to Enforce"), contending that Respondents had not scheduled Petitioner's bond hearing within the timeframe ordered by the Court. (ECF No. 10.) Respondents responded to the First Motion to Enforce and scheduled a bond hearing for the next business day, August 17, 2026. (ECF Nos. 11, 12.) On August 17, 2026, the Immigration Court held a bond hearing for Petitioner, during which it found that Petitioner posed a risk of flight and denied bond. (ECF No. 13, at 1; ECF No. 13-1, at 1.) Because Respondents promptly provided Petitioner a bond hearing, the Court denied as moot Petitioner's First Motion to Enforce. (ECF No. 14.)

On August 21, 2026, Petitioner filed the instant Motion. (ECF No. 15.) Respondents opposed the Motion, (ECF No. 19), and Petitioner replied in support, (ECF No. 20).

**B. Factual Background[2]**

Petitioner is a native of Azerbaijan. (ECF No. 15, at 2; ECF No. 15-2, at 1.) In 2023, Petitioner fled Azerbaijan for the United States "after being repeatedly arrested, beaten to the point of needing hospitalization twice, threatened with sexual assault or death, and forced out of

[2] The following facts are derived from the Petition, the filings, and exhibits accompanying those filings, including the audio recording of Petitioner's August 17, 2026 bond hearing, which Petitioner provided to the Court.

a job because of his political opinion." (ECF No. 15, at 2.) On January 26, 2023, U.S. Border Patrol encountered Petitioner near San Ysidro Port of Entry, California. (ECF No. 15-2, at 2.)

At some point, Petitioner was released. In March 2023, Petitioner applied for asylum and withholding of removal. (ECF No. 15-1, at 28.) In September 2023, Petitioner applied for and was granted work authorization. (ECF No. 15-1, at 30.) Petitioner moved to Annapolis, Maryland, where he lived for nearly three years, supporting himself working for Uber. (ECF No. 15, at 2.) He regularly reported to the Alternatives to Detention ("ATD") monitoring program, with which he contends he was fully compliant. (ECF No. 15, at 2.) According to the Department of Homeland Security's ("DHS") Form I-213 for Petitioner,[3] Petitioner failed to report on ten occasions, including three missed home visits and seven missed "biometric" check-ins, between June 1, 2023 and January 1, 2026. (ECF No. 15-2, at 3.)

On May 20, 2026, Petitioner reported to the ATD office in Hanover, Maryland. During that visit, ATD officers detained him "due to program violations." (ECF No. 15-2, at 2.) Petitioner has no criminal history. (ECF No. 15-2, at 1, 3.)

On August 17, 2026, Immigration Judge Richard VanVeldhuisen conducted Petitioner's bond hearing. (ECF No. 15-3, at 1.) Petitioner argued that he should be released on bond because he presents neither a risk of flight nor a risk of danger to the community. (ECF No. 15-3, at 3.) He cited his lack of criminal history; his support from a United States citizen sponsor in California, as well as other friends in the country; his history of legal work and his ability to continue working on release; and his pending claim for asylum. (ECF No. 15-3, at 2–3.) DHS

[3] A Form I-213 is "a standard government form that documents biographical and factual information about a deportable or inadmissible noncitizen." *España v. Nessinger*, 837 F. Supp. 3d 334, 343 n.6 (D.R.I. 2026) (alteration omitted) (quoting *Garcia-Aguilar v. Lynch*, 806 F.3d 671, 673 (1st Cir. 2015)).

argued that Petitioner should be detained pending his removal proceedings because he poses a risk of danger and a risk of flight. (ECF No. 15-3, at 3–4.) As to risk of danger, DHS cited Petitioner's purported ATD violations. (ECF No. 15-3, at 3.) With respect to risk of flight, DHS relied on Petitioner's unlawful entry; his lack of documented employment history and tax returns; his lack of family ties in the United States; and his ATD program violations. (ECF No. 15-3, at 4.) DHS also challenged the adequacy of Petitioner's sponsor given his sponsor's residence in California and Petitioner's residence in Maryland. (ECF No. 15-3, at 3–4.)

The Immigration Judge issued an oral ruling:

> The court has reviewed the evidence submitted and the arguments of counsel. With respect to danger to the community, the court does not find that he is a danger. He has no criminal history or evidence of violence or other serious misconduct.
>
> With respect to flight risk, the court will evaluate the positive and negative factors in the *Matter of Guerra*. . . . [H]e has no criminal history. That's a positive for him. With respect to a fixed address, we have a receipt notice for the asylum application in Annapolis, Maryland. We have letters of support from people in Virginia, Texas, and California. His sponsor's from California. He has no family ties in the United States, or at least one that could confer any immigration benefit on him. He's been here for about three and a half years, which is actually a short period of time. With respect to employment, he claims he works for Uber since September 2023 and has work authorization. He did file an I-589 in March of 2023, shortly after he arrived with USCIS.
>
> In just evaluating the evidence submitted, the court does not find that he's established that he has a fixed address in the United States based on the fact that his U.S. citizen sponsor's from California. He has letters of support from Virginia and Texas and California. And the reason the court also finds not a fixed address is he wasn't responding to check-ins, the ATD violation. So he was released on a program to monitor him. And I have from June 1, 2023 to January 1, 2023, . . . three home visits failed and seven [] missed biometric check-ins. So here he is given an opportunity to remain in the United States and not be detained, and he fails to comply with that. . . . [S]o ultimately the court is going to find that the negative factors in this case outweigh any positive factors and just the lack of documents to show that any amount of bail will actually reduce his risk of failure to appear. The court is going to find him a flight risk. It's not going to set any bond in this case.

(ECF No. 15-3, at 5.)

The same day, the Immigration Judge issued a written order memorializing his oral findings that Petitioner posed a risk of flight. (ECF No. 19-1, at 1–2.)

## II. Analysis

Petitioner raises three arguments in his Motion. (ECF No. 15.) First, he contends that the bond hearing before the Immigration Judge did not comply with due process. Second, he argues that the Immigration Judge did not hold DHS to its burden of proof and instead shifted the burden to Petitioner in contravention of this Court's August 13, 2026 Order. Third and finally, Petitioner argues that Respondents did not provide Petitioner a bond hearing within 24 hours as ordered by this Court. (ECF No. 15, at 4–15.) In light of these alleged deficiencies, Petitioner seeks an order directing Respondents to release him. (ECF No. 15, at 4.)

In response, Respondents argue that two provisions of the Immigration and Nationality Act ("INA") bar the Court from considering the challenges raised in Petitioner's Motion. (ECF No. 19, at 2–3 (citing 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii).) Respondents also maintain that the bond hearing complied with this Court's August 13, 2026 Order and all constitutional requirements. (ECF No. 19, at 1.)

### A. The Court Has Jurisdiction to Consider Petitioner's Constitutional Challenge to the Adequacy of His Bond Hearing

Respondents first argue that two provisions of the INA bar the Court from exercising jurisdiction over Petitioner's Motion: 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii). (ECF No. 19, at 2–3.) Neither does.

#### 1. Section 1226(e) Does Not Bar the Court from Considering Petitioner's Constitutional Challenge to His Bond Hearing

Section 1226(e) provides that "the Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review" and that "[n]o court may set aside any

action or decision by the Attorney General under [§ 1226] regarding the detention of any alien or the revocation or denial of bond or parole." *Id.* Respondents contend that the language of § 1226(e) is "crystal clear": this Court does not have jurisdiction to review Petitioner's bond decision. (ECF No. 19, at 3.) This Court joins the numerous courts in this District and around the country that have found otherwise.

Section 1226(e) does "preclude[] an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his [or her] detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (plurality opinion) (cleaned up). But it does *not* preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he or she received. *See id.* ("[Section] 1226(e) does not preclude challenges to the statutory framework that permits the alien's detention without bail.") (cleaned up); *Miranda v. Garland*, 34 F.4th 338, 352–53 & n.6 (4th Cir. 2022) (Quattlebaum, J., with Urbanski, J., concurring) (holding that § 1226(e) did not bar the court from considering a constitutional challenge to the "Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a)"); *Lucas Juarez v. Perry*, No. 1:26-cv-563 (LMB), 2026 WL 141922, at *4–5 (E.D. Va. May 20, 2026) (finding that neither §§ 1226(e) nor 1252(a)(2)(B)(ii) strip the court of jurisdiction to consider challenge to the constitutional adequacy of a bond hearing under § 1226(a)); *Mendez Trigueros v. Guadian*, No. 1:26-cv-205 (AJT), 2026 WL 2321978, at *2 (E.D. Va. Feb. 18, 2026) (same).[4]

---

[4] In arguing that the Court lacks jurisdiction under § 1226(e), Respondents rely primarily on United States District Judge Ellis' opinion in *Hatami v. Chertoff*, 467 F. Supp. 2d 637, 641 (E.D. Va. 2006). (ECF No. 19, at 2–3.) Respondents overstate Judge Ellis' holding in *Hatami*.

*Hatami* involved a noncitizen from Afghanistan who had been convicted in Virginia of domestic assault and battery. *Hatami*, 467 F. Supp. 2d at 638–39. The Board of Immigration Appeals ("BIA") denied Hatami's request for cancellation of removal, after which Hatami

### 2. **Section 1252(a)(2)(B)(ii) Does Not Bar the Court from Considering Petitioner's Constitutional Challenge to His Bond Hearing**

Section 1252(a)(2)(B)(ii) provides that, with limited exceptions, "no court shall have jurisdiction to review" decisions or action of the Attorney General or Secretary of Homeland Security "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id.* According to Respondents, because § 1226(a) grants immigration judges "full[] . . . discretion whether to grant bond, § 1252(a)(2)(B)(ii) precludes district court review" of Petitioner's bond hearing. (ECF No. 19, at 4.) This argument fails "for one simple reason: [Petitioner's] claim is limited to whether the Immigration Judge's decision comports with due process, and federal immigration officials do not have discretion as to whether to comply with the Fifth Amendment in denying a noncitizen's request for release on bond." *Lucas Juarez*, 2026 WL 1419122, at *5; *Mendez Trigueros,* 2026 WL 2321978, at *2; *see also Miranda*, 34 F.4th at 353 n.6 (holding that § 1252(a)(2)(B)(ii) does not bar jurisdiction where the noncitizens "challenge[d] the extent of the government's authority under § 1226(a) rather than a discretionary decision"); *id.* at 373 n.1 (Urbanski, J., concurring)

---

submitted three bond applications, all of which the immigration court denied due to concerns about Hatami's dangerousness. *Id.* at 639. Hatami challenged the immigration judge's decision through a habeas action in federal district court, claiming that the immigration judge failed to provide a "meaningful" bond hearing because his decision was based on the government's "bare bones allegations" of dangerousness. *Id.* Judge Ellis dismissed the habeas action, finding that § 1226(e) precluded judicial review because Hatami "challenge[d] *only* the decision to deny bond under the statute." *Id.* at 641–42 (emphasis added).

"By using the qualifier 'only,' it is clear that Judge Ellis did not close off other grounds upon which a noncitizen could seek relief from an Immigration Judge's denial of bond." *Lucas Juarez*, 2026 WL 141912, at *4. As stated above, the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit subsequently recognized as much in *Jennings* and *Miranda*, respectively. *See Jennings*, 583 U.S. at 295; *Miranda*, 34 F.4th at 352–53.

("Whether noncitizens receive due process is not a matter of discretion and is subject to judicial review.") (quotation omitted).

In sum, because Petitioner challenges Respondents' compliance with the Court's August 13, 2026 Order and the constitutional adequacy of the bond hearing he received, neither §§ 1226(e) nor 1252(a)(2)(B)(ii) strips the Court of jurisdiction to consider Petitioner's Motion. *Castellanos Madrid v. Crawford*, 3:26-cv-65 (DJN), ECF No. 12, at 4 & n.2 (E.D. Va. May 13, 2026) ("[I]n the face of a petitioner's constitutional challenge to a bond hearing, 'whether an immigration judge must consider certain factors is still a "constitutional challenge" to the procedures adopted by the Attorney General for all detention decisions under § 1226(a),' and such a challenge is not barred by the [INA's] judicial review bars in 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii).") (quoting *Miranda*, 34 F.4th at 353 & n.6).[5] The Court proceeds to the merits of Petitioner's claim.

**B. <u>The Court Will Grant the Motion Because Petitioner's Bond Hearing Was Not Constitutionally Compliant</u>**

As noted above, Petitioner's Motion raises three challenges: he contends that his bond hearing was unconstitutional, that the Immigration Judge did not hold DHS to its burden of proof,[6] and that he did not receive his bond hearing within 24 hours. (ECF No. 15, at 4–15.)

---

[5] Indeed, Respondents acknowledge that the court "ha[s] authority to review bond procedures for constitutional compliance." (ECF No. 19, at 4.)

[6] Because the Court grants the Motion with respect to Petitioner's constitutional claim, it does not address Petitioner's claims that the bond hearing violated this Court's order because the bond hearing did not occur within 24 hours and the Immigration Judge placed the burden of proof on petitioner. The Court does observe, however, that the United States Court of Appeals for the Fourth Circuit recently clarified that the noncitizen, not DHS, bears the burden of proof in immigration bond hearings. *Lopez Garcia v. Guadian*, 190 F.4th 305, 314 n.3 (4th Cir. 2026).

For the reasons articulated below, the Court finds that Petitioner's bond hearing did not comply with due process.

### 1. **Legal Standard: Process Due During a Bond Hearing Under § 1226(a)**

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 999 319, 333 (1976) (citations omitted). In the context of a bond hearing, this requires that Petitioner received "a particularized hearing in which the Immigration Judge was engaged, asked questions, and considered the arguments of counsel." *Ulloa Campos v. Noem*, No.1:26-cv-208 (RDA), ECF No. 14 at 3 (E.D. Va. Mar. 11, 2026); *see also Hasan v. Crawford*, 800 F. Supp. 3d 641, 661 (E.D. Va. 2025) (considering whether the bond hearing involved an "individualized determination of an [immigration judge] as to whether an individual should be released on bond under § 1226(a)"). Although Congress has not mandated the factors that an immigration judge must consider in providing an individualized bond decision, the United States Court of Appeals for the Fourth Circuit has signaled that certain factors established in *In Re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006), "provide substantial process." *Miranda*, 34 F.4th at 362. According to *In re Guerra*, "[a]ny evidence in the record that is probative and specific can be considered," but specific factors that are especially probative of a non-citizen's risk of flight or danger to the community include:

1. Whether the alien has a fixed address in the United States;
2. The alien's length of residence in the United States;
3. The alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future;
4. The alien's employment history;

5. The alien's record of appearance in court;

6. The alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses;

7. The alien's history of immigration violations;

8. Any attempts by the alien to flee prosecution or otherwise escape from authorities; and,

9. The alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. at *40. An immigration judge is not required to mechanically consider the *In re Guerra* factors in every case, but the factors illustrate the type of considerations that comport with due process principles: namely, those considerations that have a probative connection to the immigrant's dangerousness or risk of flight. *See Miranda*, 34 F.4th at 362 n.10 (summarizing *In re Guerra* factors that are "relevant" to detention decisions). Certainly, an immigration judge "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *In re Guerra*, 24 I. & N. Dec. at *40.

In sum, to comport with due process principles, an immigration judge must provide a detainee with a procedurally sufficient and substantively meaningful opportunity to be heard, and accordingly, an immigration judge must consider evidence that is (1) individualized to the detainee and (2) actually probative as to the detainee's bond risk when making a bond decision.

**2. <u>Petitioner's Bond Hearing Did Not Comply With Due Process</u>**

In finding Petitioner a flight risk and denying Petitioner bond, the Immigration Judge seemingly based his decision on two factors: (1) that Petitioner lacked a fixed address and

(2) that DHS' I-213 alleged that Petitioner committed ATD violations.[7] (ECF No. 15-3, at 5.) Neither conclusion passes constitutional muster.

First, the record supports that Petitioner presented a fixed address. The Immigration Judge concluded that Petitioner lacked a fixed address because his asylum application lists a residence in Annapolis, Maryland but his proposed sponsor lives in California. (ECF No. 15-3, at 5.) That conclusion mischaracterizes the evidence. The evidence instead reflects that Petitioner proposed *two* potential fixed addresses: one in Maryland, where Petitioner lived for over three years, and one in California with his sponsor. (*See, e.g.*, ECF No. 15-1, at 28 (asylum application listing Maryland address), 30 (work authorization listing Maryland address), 52 (I-213 listing Maryland address), 14 (sponsor letter listing California address).) Petitioner's counsel explained the decision to present both addresses at the hearing:

> Because . . . there's so much focus right now on bonds and sponsors, and he was living alone and providing for himself, working for Uber, we weren't sure how the court would treat that, and so he did the additional step of identifying a U.S. citizen sponsor who was willing and able to receive him.

(ECF No. 15-3, at 4.) That explanation clearly illustrates why Petitioner presented the Immigration Court with two potentially suitable addresses to release Petitioner to. *Cf. Lucas Juarez*, 2026 WL 1419122, at *7 (immigration judge found that petitioner lacked a fixed address where the petitioner presented documents suggesting that he lived at two different addresses).

---

[7] The Immigration Judge found that Petitioner's lack of criminal history weighed in his favor. (ECF No. 15-3, at 5 ("[H]e has no criminal history. That's a positive for him.")); *In re Guerra*, 24 I. & N. Dec. at *40 (non-citizen's criminal history considered as the sixth factor). The Immigration Judge also mentioned Petitioner's employment history, which would seem to weigh in Petitioner's favor, although the Immigration Court did not conclusively state so on the record. (ECF No. 15-3, at 5 ("With respect to employment, he claims he works for Uber since September 2023 and has work authorization.")); *In re Guerra*, 24 I. & N. Dec. at *40 (non-citizen's work history considered as the fourth factor).

The Court struggles to see how Petitioner's presentation of *two potentially* suitable residences—either of which the Immigration Court could, but did not, evaluate for release—could be construed as *supporting* a risk of flight. *See id.* ("The purported discrepancy of a fixed address, standing alone, does not provide evidentiary support constitutionally required to deny a noncitizen's request for release on bond, particularly given that the Immigration Judge did not consider any condition or set of conditions that would reasonably ensure [the petitioner's] appearance at future proceedings."). This is particularly true given that one of Petitioner's proposed residences was with a proposed sponsor in California. The Court cannot discern how, if at all, Petitioner's proffer of a United States citizen sponsor—the suitability of whom the Immigration Court did not even consider—could possibly weigh in favor of finding Petitioner a flight risk. It clearly demonstrates the opposite.

The Immigration Judge also found that Petitioner posed a flight risk based on his purported ATD violations. (ECF No. 15-3, at 5.) Petitioner argues that the Immigration Judge inappropriately relied on allegations of Petitioner's ATD violations in the I-213 that were not substantiated by alternative proof or evidence. Precedent from the Board of Immigration Appeals ("BIA") provides that a Form I-213 is considered "inherently trustworthy" absent an indication that it contains information that is incorrect. *Matter of Barcenas*, 19 I. & N. Dec. 609, 611 (BIA 1988). But an I-213 "loses trustworthiness if evidence is introduced in the record indicating that the I-213 is incorrect," or if "the information contained within it was obtained by someone other than the noncitizen who is the subject of the form." *España v. Nessinger*, 837 F. Supp. 3d 334, 353 (D.R.I. 2026).

Petitioner's counsel raised several points to the Immigration Judge suggesting that the I-213 could contain incorrect information, none of which the Immigration Judge addressed in his

finding. For example, Petitioner's counsel explained that, without additional documentation establishing the missed check-ins, there was no way to know whether the check-ins were due to "a technical glitch," or if Petitioner "was sick one day and checked in the next day." (ECF No. 15-3, at 4.) Counsel also noted that at least two of the dates listed on the I-213 as missed biometric check-ins were holidays (New Years Day and Thanksgiving) and, without additional evidence, it was not possible to establish whether there was "some other communication on the holidays." (ECF No. 15-3, at 4.) Despite these arguments, the Immigration Judge uncritically accepted as true the purported violations in the I-213. The Immigration Judge's reliance on DHS' own documentation without seeking corroboration or engaging with Petitioner's counsel's reasonable arguments about the potential inaccuracies violated Petitioner's due process rights. *See España*, 837 F. Supp. 3d at 354–55 (concluding that an immigration judge committed legal error where he relied solely on an untrustworthy I-213 to establish petitioner's dangerousness); *De Souza v. Wesling*, No. 26-13761, 2026 WL 2676623, at *4 (D. Mass. Sep. 11, 2026) ("[T]his Court concludes that, as a matter of law, a rebutted, uncorroborated Form I-213 is insufficient to support a flight risk finding by a preponderance of the evidence.").

In sum, the considerations upon which the Immigration Court determined that Petitioner constitute a flight risk were so lacking in substantiated probative value as to that issue that their use in determining flight risk failed to provide the Petitioner with constitutionally sufficient due process. *Mendez Trigueros*, 2026 WL 2321978, at *3.

## **III. Remedy**

Petitioner's unconstitutional bond hearing marks the second time Respondents have violated Petitioner's due process rights: first, by refusing to provide him with a bond hearing

under § 1226(a), (ECF Nos. 7, 8), and second, by failing to provide him with a constitutionally compliant hearing as ordered by this Court.

In crafting the appropriate remedy for Respondents' first violation, the Court observed that ordering a bond hearing was appropriate because it had not yet been confronted "with evidence of Respondents' failures to comply with this Court's orders." (ECF No. 7.) The Court is now confronted with that evidence. Because Respondents have twice violated Petitioner's due process rights, release is the only appropriate remedy. *Georgii v. Bondi*, No. 2:26-cv-13, 2026 WL 2439990, at *5 (E.D. Va. Aug. 4, 2026), *report and recommendation adopted sub nom. Georgii v. Bondi*, No. 2:26-cv-13 (LRL/ALA), 2026 WL 2436756 (E.D. Va. Aug. 19, 2026) (finding that release was the "appropriate remedy for repeated due process violations"); *see España*, 837 F. Supp. 3d at 355 (collecting cases and ordering similar relief); *Aguilon Fuentes v. Bondi*, No. 1:26-cv-167 (AJT), ECF No. 19, at 5 n.2 (E.D. Va. Mar. 20, 2026) (same).

## IV. Conclusion

For the reasons articulated above, the Court will grant the Motion. (ECF No. 15.) The Court will order Respondents to release Petitioner.

An appropriate Order shall issue.

Date: 10/28/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge